# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION

| | |
|---|---|
| SUSAN FINGER, | ) Civil Action No. |
| Plaintiff, | ) |
| vs. | ) **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| ECHO GLOBAL LOGISTICS, INC., DOUGLAS R. WAGGONER, SAMUEL K. SKINNER, MATTHEW FERGUSON, DAVID HABIGER, WILLIAM M. FARROW, III, and VIRGINIA L. HENKELS, | ) **JURY TRIAL DEMANDED** |
| Defendants. | ) |

Plaintiff Susan Finger ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.     This is an action brought by Plaintiff against Echo Global Logistics, Inc. ("Echo Global" or the "Company") and the members of its Board of Directors

(the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Echo Global will be acquired by funds managed by The Jordan Company, L.P. ("TJC") through TJC's affiliates Einstein MidCo, LLC ("Buyer") and Einstein Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.     On September 10, 2021, Echo Global issued a press release announcing it had entered into an Agreement and Plan of Merger dated September 9, 2021 (the "Merger Agreement") to sell Echo Global to TJC.  Under the terms of the Merger Agreement, each Echo Global stockholder will receive $41.00 in cash for each share of Echo Global common stock they own (the "Merger Consideration").   The Proposed Transaction is valued at approximately $7.3 billion.

3.     On October 21, 2021, Echo Global filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Echo Global stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Echo Global management's financial projections; (ii) the data and inputs underlying the valuation analyses performed by the Company's financial advisor,

Morgan Stanley & Co. LLC ("Morgan Stanley"); and (iii) Morgan Stanley's potential conflicts of interest.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     In short, unless remedied, Echo Global's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional

notions of fair play and substantial justice.

7.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.  Defendant Echo Global operates and maintains offices in this District, rendering venue in this District appropriate.

## THE PARTIES

8.    Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Echo Global.

9.    Defendant Echo Global is a Delaware corporation, with its principal executive offices located at 600 West Chicago Avenue, Suite 725, Chicago, Illinois 60654 and offices located at 1375 Peachtree St. NE, Atlanta, GA, 30309.  The Company is a leading Fortune 1000 provider of technology-enabled transportation and supply chain management services.  Echo Global's common stock trades on the Nasdaq Global Select Market under the ticker symbol "ECHO."

10.    Defendant Douglas R. Waggoner ("Waggoner") has been Chairman of the Board since June 2015, Chief Executive Officer ("CEO") of the Company since December 2006, and a director since February 2008.

11.     Defendant Samuel K. Skinner ("Skinner") has been Lead Independent Director since June 2017, and a director of the Company since September 2006. Defendant Skinner previously served as non-executive Chairman of the Board from February 2007 to June 2015.

12.     Defendant Matthew Ferguson ("Ferguson") has been a director of the Company since February 2010.

13.     Defendant David Habiger ("Habiger") has been a director of the Company since December 2012.

14.     Defendant William M. Farrow, III ("Farrow") has been a director of the Company since June 2017.

15.     Defendant Virginia L. Henkels ("Henkels") has been a director of the Company since September 2018.

16.     Defendants identified in paragraphs 10-15 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

17.     TJC is a global private equity firm that was founded as a middle market private investment partnership focused on leverage buyouts and recapitalizations. TJC invests in and contributes to the growth of many businesses across a wide range

of industries, including Consumer & Healthcare; Industrials; Technology, Telecom & Utility; and Transportation & Logistics.

18.　　Buyer is a Delaware corporation owned and controlled by funds managed by TJC.

19.　　Merger Sub is a Delaware corporation and an indirect wholly owned subsidiary of Buyer.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

20.　　Echo Global is a leading provider of technology-enabled transportation and supply chain management solutions.  The Company utilizes a proprietary technology platform to compile and analyze data from its multi-modal network of transportation providers to satisfy client transportation and logistics needs.  Echo Global's platform enables it to quickly adapt to and offer efficient and cost-effective solutions for clients' shipping needs.  The Company focuses primarily on arranging transportation with truckload ("TL") and less than truckload ("LTL") carriers.  Echo Global also offers intermodal (which involves moving a shipment by rail and truck), small parcel, domestic air, expedited and international transportation services.  Echo Global's core logistics services, primarily brokerage and transportation management services, include carrier selection, dispatch, load management and tracking.

21.     Echo Global has one operating segment, technology enabled transportation and supply chain management services.  In fiscal year 2020, the Company had revenue of approximately $2.5 billion.  Echo Global employed approximately 2,405 employees as of September 30, 2021.

22.     On July 28, 2021, the Company announced its second quarter 2021 financial results.  Revenue increased 81.6% to $934.5 million from the second quarter of 2020.  Gross profit increased 59.1% to $132.2 million from the second quarter of 2020.  Adjusted gross profit increased 54.5% to $136.1 million from the second quarter of 2020.  TL revenue increased 95.1% to $687.0 million from the second quarter of 2020, and TL volume increased 26.6% from the second quarter of 2020.  LTL revenue increased 53.7% to $217.6 million from the second quarter of 2020, and LTL volume increased 27.4% from the second quarter of 2020.  Transactional revenue increased 80.7% to $716.9 million and Managed Transportation revenue increased 84.6% to $217.7 million from the second quarter of 2020.  Net income increased to $18.4 million, compared to $1.0 million in the second quarter of 2020.  Fully diluted earnings per share ("EPS") increased to $0.69 in the second quarter of 2021 and non-GAAP fully diluted EPS increased to $0.84 in the second quarter of 2021.  Adjusted EBITDA grew 144.5% to $36.2 million, compared to $14.8 million in the second quarter of 2020.  Reflecting on the

Company's results and looking to the future, defendant Waggoner stated:

> Echo's record setting second quarter results reflect strong execution across our uniquely flexible business model and its ability to create significant value for our customers in the robust yet constrained freight environment. Our combination of technology and people helped deliver numerous quarterly revenue and profitability records and improved metrics across the business. Looking ahead we will continue to leverage our investments in technology and drive strong execution to further capture both size and scale through the second half of the year.

**The Proposed Transaction**

23.    On September 10, 2021, Echo Global issued a press release announcing

the Proposed Transaction, which states, in relevant part:

> CHICAGO and NEW YORK, Sept. 10, 2021 -- Echo Global Logistics, Inc. (Nasdaq: ECHO) ("Echo"), a leading provider of technology-enabled transportation and supply chain management services, today announced that it has entered into a definitive agreement to be acquired by funds managed by The Jordan Company, L.P. ("TJC"), a global private equity firm, for an equity value of approximately $1.3 billion. Through this transaction, Echo will become a private company which it expects will provide additional resources and greater flexibility to continue to build its technology and data science platform and enhance its value proposition to shippers and carriers. Additionally, the transaction will allow Echo to benefit from the operating capabilities, capital support and sector expertise of The Jordan Company.
>
> **Transaction Details**
>
> Under the terms of the agreement, Echo stockholders will receive $48.25 per share in cash, which represents a premium of approximately 54% over Echo's closing share price on September 9, 2021 and a premium of approximately 32% over Echo's all time high closing share price on September 10, 2018. Echo believes that the transaction

provides its stockholders with an attractive premium that delivers immediate compelling value for their shares. The definitive agreement was unanimously approved by Echo's Board of Directors, which recommended that Echo's stockholders approve the agreement.

The acquisition is subject to customary closing conditions, including stockholder approval and the expiration or termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act. The transaction is expected to be completed in the fourth quarter of 2021. The closing is not subject to a financing condition.

"I'm thrilled to partner with TJC as they bring significant expertise and industry experience to enable Echo to further accelerate our success in the market," said Doug Waggoner, Chairman of the Board of Directors and Chief Executive Officer at Echo. "In addition, having an experienced financial partner, with resources to fund continued growth, will result in a more rapid expansion of Echo's supply chain capabilities, including all of the automation planned to enable both our people and our digital freight marketplace."

"We are impressed with Echo's people, technology, and business results, since their founding in 2005, and are excited that Echo's leadership selected TJC as their partner in this recapitalization," said Brian Higgins, head of TJC's logistics and supply chain vertical. "We strongly support the team's vision for continued growth and look forward to partnering with them as we bring expanded financial resources and expertise to accelerate Echo's technology leadership that has set the company apart from its competitors."

**Advisors**

Morgan Stanley & Co. LLC is serving as exclusive financial advisor to Echo, and Winston & Strawn LLP is serving as legal counsel to Echo. Citi is serving as financial advisor to TJC and Kirkland & Ellis LLP is serving as legal counsel to TJC. Credit Suisse AG and Citi will provide financing for the transaction.

## Insiders' Interests in the Proposed Transaction

24.     Echo Global insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Echo Global.

25.     Notably, Company insiders stand to reap substantial financial benefits for securing the deal.  Pursuant to the Merger Agreement, all outstanding Company restricted stock awards and restricted stock units will convert into the right to receive cash payments.  The following table sets forth the cash payments the Company's non-employee directors stand to receive in connection with their Company restricted stock units:

| Name of Non-Employee Director | No. of Restricted Stock Units[1] | Value of Restricted Stock Units upon Vesting ($)[2] |
|---|---|---|
| Samuel K. Skinner | 5,385 | 259,826 |
| Matthew Ferguson | 5,385 | 259,826 |
| David Habiger | 5,385 | 259,826 |
| William M. Farrow III | 5,385 | 259,826 |
| Virginia L. Henkels | 5,385 | 259,826 |

The following table sets forth the cash payments the Company's named executive officers stand to receive in connection with their restricted stock awards and restricted stock units:

| Named Executive Officer | Restricted Stock Awards (Single Trigger) ($) | Restricted Stock Units (Single Trigger) ($) |
|---|---|---|
| Douglas R. Waggoner | 1,769,810 | 4,277,186 |
| Peter M. Rogers | 215,533 | 1,416,104 |
| David B. Menzel | 834,629 | 1,999,271 |

26. Further, if they are terminated in connection with the Proposed Transaction, Echo Global's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Named Executive Officer | Golden Parachute Compensation | | | |
|---|---|---|---|---|
| | Cash ($)[1] | Equity ($)[2] | Perquisites/Benefits ($)[3] | Total Value ($)[4] |
| Douglas R. Waggoner | 6,035,516 | 19,122,746 | 20,910 | 25,179,172 |
| Peter M. Rogers | 1,912,500 | 3,054,047 | 10,455 | 4,977,002 |
| David B. Menzel | 3,397,843 | 8,965,703 | 20,910 | 12,384,456 |

## The Proxy Statement Contains Material Misstatements or Omissions

27. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Echo Global's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

28. Specifically, as set forth below, the Proxy Statement fails to provide

Company stockholders with material information or provides them with materially misleading information concerning: (i) Echo Global management's financial projections; (ii) the data and inputs underlying the valuation analyses performed by the Company's financial advisor, Morgan Stanley; and (iii) Morgan Stanley's potential conflicts of interest.

***Material Omissions Concerning Echo Global Management's Financial Projections***

29.    The Proxy Statement omits material information regarding Company management's financial projections.

30.    For example, the Proxy Statement sets forth that Morgan Stanley, for its *Discounted Cash Flow Analysis* ("DCF"), utilized "estimates of future unlevered free cash flows for the third and fourth calendar quarters in 2021 and each of the fiscal years 2022 through 2025." Proxy Statement at 44. The Proxy Statement, however, fails to disclose the Company's future unlevered free cash flows for the third and fourth calendar quarters in 2021 and each of the fiscal years 2022 through 2025 and the line items underlying the Company's unlevered free cash flows.

31.    The Proxy Statement also fails to disclose each of the line items underlying the Company's: (i) Adjusted Gross Profit; (ii) Adjusted EBITDA; and (iii) Adjusted EBITDA less Capital Expenditures.

32.    The omission of this information renders the statements in the "Certain

Echo Unaudited Prospective Financial Information" and "Opinion of Morgan Stanley" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Morgan Stanley's Financial Analyses***

33.    Additionally, the Proxy Statement fails to disclose material information concerning Morgan Stanley's financial analyses.

34.    The Proxy Statement describes Morgan Stanley's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of Morgan Stanley's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Echo Global's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Morgan Stanley's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

35.    With respect to Morgan Stanley's *DCF*, the Proxy Statement fails to disclose: (i) the Company's future unlevered free cash flows for the third and fourth calendar quarters in 2021 and each of the fiscal years 2022 through 2025; (ii) quantification of the Company's terminal values; (iii) quantification of the inputs and assumptions underlying the discount rate range of 7.4% to 8.9%; and (iv) the

number of shares of Echo Global stock outstanding used to calculate the range of implied present values per share.

36.     With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Proxy Statement fails to disclose quantification of the inputs and assumptions underlying the discount rate of 8.2%.

37.     With respect to Morgan Stanley's *Publicly Traded Comparable Companies Analysis* and *Precedent Transactions Analysis*, the Proxy Statement fails to include the individual financial metrics for the comparable companies and multiples and financial metrics for each of the transactions analyzed, respectively.

38.     The omission of this information renders the statements in the "Opinion of Morgan Stanley" and "Certain Echo Unaudited Prospective Financial Information" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Morgan Stanley's Potential Conflicts of Interest***

39.     The Proxy Statement fails to disclose the potential conflicts of interest faced by the Company's financial advisor, Morgan Stanley.

40.     The Proxy Statement sets forth that "[i]n the two years prior to the date of its opinion, Morgan Stanley and its affiliates have provided financing services to Buyer and certain of its affiliates and expects to receive fees in connection with such

services" *Id.* at 48.  The Proxy Statement fails to disclose quantification of the fees Morgan Stanley expects to receive for providing these financing services.

41.    Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

42.    The omission of this material information renders the statements in the "Opinion of Morgan Stanley" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

43.    The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Echo Global stockholders will be unable to make an informed voting or appraisal decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

44.    Plaintiff repeats all previous allegations as if set forth in full.

45.    During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

46.    By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about Echo Global management's financial projections, the data and inputs underlying the valuation analyses performed by the Company's financial advisor, Morgan Stanley, and Morgan Stanley's potential conflicts of interest   The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

47.    The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

48.    By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

49.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

50.     Plaintiff repeats all previous allegations as if set forth in full.

51.     The Individual Defendants acted as controlling persons of Echo Global within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Echo Global, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

52.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be

corrected.

53.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

54.    In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

55.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants

are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Echo Global's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Echo Global, and against defendants, as follows:

A.   Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Echo Global stockholders;

B.   In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.   Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.   Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and

proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated: November 4, 2021                 **WEISSLAW LLP**

                                        /s/ Michael A. Rogovin
                                        Michael A. Rogovin
                                        Georgia Bar No. 780075
                                        476 Hardendorf Ave. NE
                                        Atlanta, GA 30307
                                        Tel.: (404) 692-7910
                                        Fax: (212) 682-3010
                                        mrogovin@weisslawllp.com

                                        *Attorneys for Plaintiff*